Carla M. Wirtschafter (SBN 292142)
Email:   cwirtschafter@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA  90067-6078
Telephone 310-734-55200
Fax 310-734-5299

Jordan W. Siev (*Pro hac vice forthcoming*)
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel: (212) 521-5400
jsiev@reedsmith.com

*Attorneys for Petitioner*
  *Daniel Snyder*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of Daniel Snyder for an Order Directing Discovery from Bruce Allen Pursuant to 28 U.S.C. § 1782 | Misc. Action No.  8:21-mc-19<br><br>***Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782** |

1  Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner"), by and through his undersigned counsel and based upon the Declaration of Jordan W. Siev, Esq., dated April 15, 2021 ("Siev Decl."), filed concurrently herewith, respectfully petitions this Court *ex parte* for an Order pursuant to 28 U.S.C. § 1782, compelling Mr. Bruce Allen ("Mr. Allen," or "Respondent"), an individual residing in this District, to provide discovery for use in a proceeding currently pending in India.

This Petition is supported by the Declaration of Jordan W. Siev and the Exhibits thereto and the memorandum of points and authorities filed concurrently herewith.

Dated: April 15, 2021

REED SMITH LLP

By: */s/ Carla M. Wirtschafter*
Carla M. Wirtschafter
Jordan W. Siev (*Pro hac vice forthcoming*)

*Attorneys for Petitioner
Daniel Snyder*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1
II. PARTIES TO THIS PETITION ....................................................................... 3
III. JURISDICTION AND VENUE ........................................................................ 3
IV. THE INDIAN ACTION .................................................................................... 4
    A. Parties to the Indian Action .................................................................. 4
    B. The MEAWW Website and the Defamatory Articles ......................... 4
V. MR. ALLEN HAS KNOWLEDGE OF THE UNDERLYING CORRUPT MISINFORMATION CAMPAIGN THAT GAVE RISE TO THE DEFAMATORY ARTICLES ....................................................................... 7
VI. DISCOVERY REQUESTED ............................................................................ 8
VII. PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY .......................................................................................................... 9
    A. Section 1782 Governs this Court's Authority to Order Discovery ............ 9
    B. Petitioner Satisfies the Requirements under Section 1782 ...................... 10
    C. The Court Should Exercise its Discretion to Grant Petitioner the Discovery He Seeks ............................................................................... 11
VIII. CONCLUSION ............................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004)..........................................9

*AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*,
   762 F. App'x 447 (9th Cir. 2019)....................................................................11

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) ........................................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)..........................................................................9, 10, 11, 12

*London v. Does 1-4*,
   279 F. App'x 513 (9th Cir. 2008)....................................................................10

**Statutes**

28 U.S.C. § 1331.................................................................................................3

28 U.S.C. § 1391(c) ............................................................................................3

28 U.S.C. § 1782........................................................................................*passim*

28 U.S.C. § 1782(a) .......................................................................................9, 10

**Other Authorities**

https://meaww.com/washington-redskins-dan-snyder-jeffrey-epstein-
   sexual-harrasment-sex-trafficking-scandal-name-change.........................................5

https://meaww.com/washington-redskins-owner-dan-snyder-to-step-
   down-owing-to-sex-trafficking-allegations-fan-reaction ........................................5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Petitioner seeks discovery from Respondent in aid of litigation currently pending in The High Court of Delhi at New Delhi (the "Indian Court"), bearing the caption *Daniel Snyder Through His SPA Holder vs. Eleven Internet Services LLP & Ors.*, filed on August 7, 2020 (the "Indian Action").

The Indian Action arises from the publication of a series of false and defamatory "news" articles targeting Petitioner on the MEA WorldWide website, located at www.meaww.com ("MEAWW").  The articles contain flagrantly false statements about Petitioner, including but not limited to accusing Petitioner of sexual misconduct, such as involvement in sex trafficking, and a purported affiliation with sexual predator Jeffrey Epstein.

In the Indian Action, Petitioner asserts claims for defamation *per se* against the authors of these articles, as well as Eleven Internet Services LLP ("Eleven") which, upon information and belief, directed the publication of those false and defamatory articles on behalf of hidden third-party clients.

Mr. Allen is the former President and General Manager of the Washington Football Team, previously known as the Washington Redskins (the "Team").  During his employment by the Team from 2009 to 2019, Mr. Allen ran the day-to-day operations of the Team.

Petitioner has learned through discovery received in a separate Section 1782 proceeding that, during the time period of January 9, 2020 to November 18, 2020, Mr. Allen participated in 87 separate phone calls totaling an astonishing 1,237 minutes (nearly 21 hours) with Mr. John Moag – the investment banker for the 3 now former minority owners of the Team.  Only 1 of the 87 calls took place before April 2020 meaning, incredibly, there were 86 calls in just 7-1/2 months.  Further, in the 6 weeks leading up to the publication of the Defamatory Articles (as defined herein), Respondent and Mr. Moag spoke 21 times for 270 minutes, or 4.5 hours.  These calls are notable

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

not only for their frequency and length, but for the fact that Mr. Moag himself had extensive contact with representatives of the media both before and after the publication of the Defamatory Articles, and also has exhibited advance knowledge of forthcoming negative articles about Petitioner.

Further, many of Respondent's phone calls and communications with Mr. Moag took place around the time that Mr. Moag spoke with members of the press, most notably *The Washington Post,* which published a series of negative articles about Petitioner and the Team on the same date as the Defamatory Articles and thereafter. Notably, despite Respondent's prominent position and hands-on role in running the Team during the time period discussed in many of these negative articles, Respondent's name rarely, if ever, was mentioned in these articles – and was completely absent from the Defamatory Articles at issues in the Indian Action.

Accordingly, Petitioner believes that Respondent is in possession, custody and/or control of documents and communications that contain relevant information concerning the same campaign of defamation against Petitioner, which included the publication of the subject Defamatory Articles (as defined herein) that are at issue in the Indian Action. The form of the subpoenas for the production of documents and for deposition testimony that Petitioner seeks to serve on Respondent are attached to the Siev Decl. as **Exhibits A and B**.

The documents and information in Respondent's possession, custody and/or control indisputably will aid the Indian Court in resolving Petitioner's defamation claims.

As discussed herein, Petitioner meets all the statutory criteria for the issuance of an order allowing the requested discovery. *See* 28 U.S.C. § 1782. Additionally, all the discretionary factors that this Court may consider favor granting this Petition. Petitioner thus respectfully requests that his Petition be granted.

*EX PARTE* PETITION FOR ASSISTANCE IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Notably, this Court and other District Courts have granted Petitioner's requests for Section 1782 discovery in aid of the Indian Action against parties believed to be involved in the corrupt misinformation campaign being waged against Petitioner:

- **United States District Court for the Central District of California**: *In re Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782* (C.D. Cal., Misc. Action No. 2:20-mc-00076);

- **United States District Court for the District of Maryland**: *In re Application of Daniel Snyder for an Order Directing Discovery from Shawn Ferguson Pursuant to 28 U.S.C. § 1782* (D. Md., Case No. 1:20-cv-03299-ELH); *In re Application of Daniel Snyder for an Order Directing Discovery from Moag & Co. LLC Pursuant to 28 U.S.C. § 1782* (Civil Action No. 1:20-cv-02705-ELH);

- **United States District Court for the District of Colorado**: *In re Application of Daniel Snyder for an Order Directing Discovery from Jessica McCloughan and Friday Night Lights LLC Pursuant to 28 U.S.C. § 1782* (D. Col., Case No. 1:20-mc-00199-NRN); and

- **United States District Court for the Southern District of Texas**: *In re Application of Daniel Snyder for an Order Directing Discovery from Precision Creations LLC Pursuant to 28 U.S.C. § 1782* (S.D. Tex., Case 4:20-MC-02665); *In re Application of Daniel Snyder for an Order Directing Discovery from The Ardent Group LLC Pursuant to 28 U.S.C. § 1782* (S.D. Tex., Case No. 4:20-mc-02867).

## II. PARTIES TO THIS PETITION

Petitioner Daniel Snyder is a businessman and philanthropist best known for his ownership of the Washington Football Team, and is an adult individual and a resident of the state of Maryland.

Bruce Allen is an individual who, upon information and belief, resides in Newport Beach, CA.

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this application under 28 U.S.C. §§ 1331 and 1782. This Court has personal jurisdiction over Respondent because he resides in the State of California and in this Judicial District.

Under 28 U.S.C. §§ 1391(c) and 1782, venue is proper in this Judicial District because Respondent resides in this District.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## IV. THE INDIAN ACTION

### A. Parties to the Indian Action

Petitioner has asserted a claim for defamation *per se* in the Indian Court against Indian company Eleven Internet Services LLP, and its Indian subsidiary MEAWW, as well as Indian residents Anay Chowdhary ("Anay") and Nirnay Chowdhary ("Nirnay"), Prarthna Sarkar ("Sarkar") and Jyotsna Basotia ("Basotia").

### B. The MEAWW Website and the Defamatory Articles

MEAWW purports to be, and holds itself out as, a news website.  MEAWW publishes "news" stories regarding a broad variety of matters, including pop culture, law and government, and media and entertainment.

In reality, however, rather than being legitimate news sources and reporters, MEAWW intentionally sows disinformation at the behest of its undisclosed clients, including governments and intelligence services, and often is hired by clients that are cloaked behind several layers of anonymous corporate entities.  MEAWW thus acts as a hired agent of these unnamed entities to knowingly spread, among other things, false and defamatory statements concerning its clients' rivals.

MEAWW has worldwide reach, as it publishes globally via the internet and receives internet traffic from the United States, India, and many other countries around the world.  It has touted itself as having more than 150 million unique users and more than 1 billion page views per month.

On or about July 16, 2020, MEAWW posted several false and wholly fabricated articles — written by Sarkar and Basotia, and published at the direction of the Chowdhary brothers — regarding Petitioner, which falsely accuse him of a broad array of acts of criminal sexual misconduct including, among other things, involvement in sex trafficking, and affiliating with sexual predator Jeffrey Epstein (collectively, the "Defamatory Articles").

These included "Washington Redskins owner Dan Snyder faces sex trafficking allegations; Internet says, 'He was on Epstein's list," published at

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

https://meaww.com/washington-redskins-owner-dan-snyder-to-step-down-owing-to-sex-trafficking-allegations-fan-reaction (the "First Defamatory Article"). The First Defamatory Article falsely states that Mr. Snyder "has found himself in trouble yet again and this time it's allegedly for sex trafficking. The minority owners [of the Washington Football Team] are apparently looking at bringing him down citing inappropriate and unchaste behavior as one of the major reasons." The First Defamatory Article went on to publish utterly baseless speculation regarding whether a then-forthcoming *Washington Post* article about the Washington Football Team "would be about [Snyder's] alleged involvement in sex trafficking[,]" quoting several anonymous posters from the internet forum Reddit.com, including baselessly quoting that "[Snyder] is getting [arrested] for sex trafficking. He was on [Jeffrey] Epstein's list too." *Id.*

MEAWW published a second article on July 16, 2020: "#RedskinsScandal: Will Dan Snyder rename Washington Redskins the 'Epsteins'? Angry Internet screams 'throw him out," published at https://meaww.com/washington-redskins-dan-snyder-jeffrey-epstein-sexual-harrasment-sex-trafficking-scandal-name-change (the "Second Defamatory Article," and together with the First Defamatory Article, the "Defamatory Articles"). The Second Defamatory Article refers to, and repeats, the false allegations of the First Defamatory Article: namely, the false claims that Mr. Snyder is linked to sexual predator Jeffrey Epstein and that Mr. Snyder is or was involved in sexual misconduct, including sexual harassment and/or sex trafficking.

These blatantly false and wholly fabricated articles purport to be factual news stories, but were and are utterly untrue and have no legitimate journalistic basis whatsoever.

However, although MEAWW publicly named "the internet" as its source for the false and libelous statements in the Defamatory Articles, upon information and belief certain individuals either furnished, or procured for, the defendants in the Indian Action

false and unsubstantiated claims regarding Mr. Snyder in connection with MEAWW's drafting of the Defamatory Articles.

The statements that MEAWW published about Mr. Snyder are categorically false. Moreover, the defendants in the Indian Action published these defamatory, inflammatory statements about Mr. Snyder with deliberate intent to damage Mr. Snyder, or at best, complete disregard for their basis in fact.

Although MEAWW reluctantly removed the Defamatory Articles after Petitioner demanded their immediate removal, the damage to Mr. Snyder's reputation had already been done.

Mr. Snyder's children and other family members, and numerous of Mr. Snyder's friends, neighbors, and business associates, were exposed to the Defamatory Articles, either by directly viewing the Defamatory Articles online or by receiving word of the Defamatory Articles. Consequently, Mr. Snyder's reputation and good standing has been severely harmed, and will continue to be harmed, by the Defamatory Articles, and the members of Mr. Snyder's family have been severely harmed due to the publication of these lies on behalf of hidden third-party clients of MEAWW.

The false allegations that the defendants in the Indian Action have seeded on the internet have taken root beyond MEAWW itself. For instance, on or about July 16, 2020 – not coincidentally, the very same day that MEAWW published the Defamatory Articles at issue herein – the following appeared on a Twitter account that has been confirmed as a fake account existing for no purpose other than to propagate false and misleading information:

> According to insiders and anonymous Washington Post employees, the [upcoming] article will allege that: Dan Snyder abuses drugs and alcohol[;] Snyder paid off refs. Some refs have made $2 million from him. And Snyder is not the only team owner paying off refs. Others do it too. Snyder and former Redskins coach Jay Gruden, brother of Jon Gruden, pimped out their cheerleaders to season ticket holders while holding their passports from them in a foreign country. Jay Gruden and then Redskins running back Kapri Bibbs were sleeping with the same woman. When Jay found out, he got petty and benched Bibbs. During that game when Bibbs was on the bench, Bibbs' replacement missed a block and that resulted in quarterback Alex Smith suffering a broken leg. Alex hasn't been able to

play football ever since[.] Snyder and Gruden would hold sex parties with rampant drug usage and some sexual assaults[.] Snyder held nude photoshoots with the Redskins cheerleaders[.] Lawyers are already involved[.]

Whether this account is one of the "bots" utilized regularly by MEAWW to further propagate its for-profit lies, or written by a human agent of MEAWW, will be further elucidated through discovery sought herein.

Petitioner commenced the Indian Action on August 7, 2020, asserting claims for defamation *per se* arising out of the Defamatory Articles. Petitioner seeks damages of $10 million.

## V. MR. ALLEN HAS KNOWLEDGE OF THE UNDERLYING CORRUPT MISINFORMATION CAMPAIGN THAT GAVE RISE TO THE DEFAMATORY ARTICLES

Respondent is the former President and General Manager of the Team, and, during his ten-year employment with the Team from 2009 to 2019, was responsible for the day-to-day management and operations of the Team and its employees.

Discovery in a separate Section 1782 proceeding has confirmed that, during the time period of January 9, 2020 to November 18, 2020, Mr. Allen communicated extensively and frequently with Mr. John Moag – the investment banker for the noq former minority owners of the Team. Critically, that same discovery confirmed that, both before and after the publication of the Defamatory Articles, Mr. Moag himself had extensive contact with representatives of the media and demonstrated his advance knowledge of forthcoming negative articles about Petitioner.

Petitioner has learned that, from January 9 to November 18, 2020, Respondent and Mr. Moag participated in at least 87 separate phone calls, lasting nearly 21 hours (1,237 minutes). In particular, in the 6 weeks leading up to the publication of the Defamatory Articles, Respondent and Mr. Moag spoke 21 times for 270 minutes, or 4.5 hours. Given that Respondent no longer held a position with the Team as of 2019, Respondent had no valid business reason for speaking with Mr. Moag during that time period. Additionally, during 2020, Mr. Allen emailed and texted website links and

excerpts of negative news coverage concerning Petitioner to Mr. Moag, suggesting that Mr. Allen actively sought out such information.

Moreover, the phone calls and other communications that took place between Respondent and Mr. Moag coincided in many cases with communications between Mr. Moag and various members of the press, including *The Washington Post,* which published a series of negative articles about Petitioner and the Team, both on the same date as the Defamatory Articles and thereafter. Notably, despite Respondent's prominent position and hands-on role in running the Team on a day-to-day basis during the time period discussed in many of these negative articles, Respondent's name rarely, if ever, was mentioned in these articles – and was wholly absent from the Defamatory Articles at issue in the Indian Action. This glaring omission raises further questions about Respondent's possible role in and/or knowledge of the creation, solicitation, drafting and publication of the Defamatory Articles.

Accordingly, Petitioner has a good faith belief that Respondent has specific knowledge of the creation and distribution of the MEAWW articles, and thus has information relevant to the Indian Action.

## VI. DISCOVERY REQUESTED

Upon information and belief, Respondent is in possession, custody, and/or control of substantial documentary information — including emails, text messages, electronic and physical notes, call records, and other documents — that would demonstrate his connections to the media, including MEAWW, as well as third parties hostile to Petitioner, and the coordination between each of the foregoing to disparage and defame Petitioner — all of which is currently at issue in the Indian Action. Accordingly, Respondent possesses documents and information that bear directly upon the issues in the Indian Action and which Petitioner would be unable to obtain through discovery in the Indian Action.

As set forth in further detail in the subpoenas, Petitioner seeks discovery concerning (1) Respondent's communications with third parties concerning Mr. Snyder

and the MEAWW articles; (2) Respondent's communications with the Indian Defendants, or their representatives; (3) the identities of any other third parties involved in directing, coordinating with or supporting any negative information campaign about Petitioner; and (4) other documents and information that are relevant to the Indian Action and are available solely through Respondent.

In addition to requests for the production of documents from Respondent, Petitioner seeks to depose Respondent concerning the subject matters described above and in the respective subpoenas directed to him.

## VII. PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY

### A. Section 1782 Governs this Court's Authority to Order Discovery

28 U.S.C. § 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004).

Indeed, courts in this Circuit have repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004). A district court should consider a Section 1782 request in the light of the statute's aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Id.*

### B. Petitioner Satisfies the Requirements under Section 1782

A District Court has authority to grant an application for judicial assistance pursuant to Section 1782 if the following requirements are met: (1) the person from whom discovery is sought resides or is found in the Central District of California; (2) the application seeks evidence for use in a proceeding before a foreign or international tribunal; and (3) the requesting party is a foreign or international tribunal or an interested person in the foreign proceeding. 28 U.S.C. § 1782(a); *London v. Does 1-4,* 279 F. App'x 513, 515 (9th Cir. 2008). Each of these prerequisites for this Court to order discovery in aid of the Indian Action is satisfied.

*First*, Mr. Allen resides in this District, as he is an individual believed to reside in Newport Beach, California.

*Second*, this request seeks the production of documents from and testimony by Respondent in support of the Indian Action. A true and correct copy of the pleadings filed in the Indian Action is attached to the Siev Decl. as **Exhibit C,** and copies of the proposed subpoenas to be served on Respondent are annexed to the Siev Decl. as **Exhibits A and B**. As set forth above, the discovery that Petitioner seeks is intended to further establish the liability of the defendants in the Indian Action, by elucidating their bad faith and active participation in a broader scheme to defame Petitioner.

*Third*, Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person is one who has significant "participation rights" in the foreign action. *Intel*, 542 U.S. at 256-57. As the Supreme Court noted in *Intel*, "litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782." *Id.* at 256. Petitioner is the plaintiff in the Indian Action, and therefore is an "interested person" for the purposes of § 1782.

Accordingly, Petitioner's request satisfies the elements necessary to permit discovery pursuant to 28 U.S.C. § 1782, as recognized in this Circuit.

### C. The Court Should Exercise its Discretion to Grant Petitioner the Discovery He Seeks

Once the statutory requirements of 28 U.S.C. § 1782 are met, the district court is free to grant discovery in its discretion. *See AIS GmbH Aachen Innovative Sols. v. Thoratec LLC,* 762 F. App'x 447, 449 (9th Cir. 2019). The Supreme Court has identified a number of factors for courts to consider when ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015). Here, all of these factors weigh in favor of granting the application.

*First*, where, as here, discovery is sought from a party that is not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S. at 264 (internal citations omitted). Respondent is not a party to the Indian Action and, upon information and belief, has no legal presence in India. Thus, the Indian Court has no jurisdiction to acquire the documents and testimony that Petitioner seeks here and which are critical to Petitioner's ability to prove his claims in the Indian Action.

*Second,* courts must look at the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance. Here, there is no evidence that the discovery sought in this application would "offend" the Indian Court. To the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

contrary, the discovery sought would relate to the lack of truth in the Defamatory Articles and shed light on the authors' motivations in posting the Defamatory Articles, goals which are directly relevant to the Indian Action.

**Third**, this application is not an attempt to circumvent any foreign proof-gathering restrictions and does not violate any Indian restrictions on gathering evidence.[1] Petitioner has a good-faith basis for believing that he will be able to use these materials in the Indian Action. Petitioner has no reason to believe that the Indian Court would not be receptive to the judicial assistance requested, nor is Petitioner aware of any limitation on discovery imposed by the Indian Court, either generally or specifically, such that the request would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. The Court's grant of judicial assistance would permit Petitioner to appropriately prosecute his claim against Eleven, along with the authors of the Defamatory Articles and Eleven's relevant principals and affiliates, in India given that Respondent is in exclusive possession of information highly relevant to Petitioner's claim.

**Fourth**, the document requests in the proposed subpoenas are neither unduly burdensome nor intrusive. Petitioner has tailored his narrow requests to seek only those materials relevant to the Indian Action, and the documents requested lend themselves to easy identification and production.

///
///
///
///
///

---

[1] As the Supreme Court noted in *Intel*, the Court's analysis of a Section 1782 application does not extend to the discoverability or admissibility of the information in the foreign forum. *See Intel*, 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

## VIII. **CONCLUSION**

For the reasons set forth herein, Petitioner respectfully requests that the Court issue an Order, pursuant to 28 U.S.C. § 1782, granting Petitioner leave to serve Mr. Allen with the subpoenas appended to the Siev Decl. as Exhibits A and B.

Dated: April 15, 2021

REED SMITH LLP

By: */s/ Carla M. Wirtschafter*
Carla M. Wirtschafter
Jordan W. Siev (*Pro hac vice forthcoming*)

*Attorneys for Petitioner*
*Daniel Snyder*